Karen ZAVATSKY, Plaintiff,

v.

Marcia ANDERSON, Ralph Arnone, Thomas Bisch, Angel Miranda, Bette Randlette, Terri Lockovitch–Morabito, Dorothea Hamilton, and Linda Madigan, Defendants.

No. 3:00CV00844 AVC.

United States District Court, D. Connecticut.

Feb. 12, 2001.

John R. Williams, Williams & Prattis, New Haven, CT, for plaintiff.

John Essex Tucker, Attorney General's Office, Hartford, CT, for defendants.

### RULING ON THE DEFENDANTS' MOTION TO DISMISS

COVELLO, Chief Judge.

The plaintiff, Karen Zavatsky, brings this action for damages against the defendants, Marcia Anderson, Ralph Arnone, Angel Miranda, Bette Randlette, Terri Lockavitch–Morabito, Dorothea Hamilton, Thomas Bisch and Linda Madigan pursuant to 42 U.S.C. § 1983 ("Section 1983"). She alleges that the defendants, all employees of the Connecticut Department of Children and Families (the "DCF"), interfered with her right to family integrity and family association and deprived her of equal protection of the laws in violation of the United States Constitution and the Constitution of the state of Connecticut. The defendants bring the within motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the complaint fails to state a cause of action upon which the court can grant relief.

The issues presented are: 1) whether the complaint states a claim for violation of the Fourteenth Amendment right to family integrity based on an adult's strong emotional relationship with the unrelated, non-adopted child of her partner; 2) whether the complaint alleges facts sufficient to state an equal protection claim where employees of a state agency administered internal agency policies in a discriminatory manner based on sexual orientation; and if so, whether the state employees' unequal implementation of those policies can be said to have violated clearly established law; 3) whether the complaint alleges facts sufficient to state a cause of action under

Section 1983 where it fails to allege the personal involvement of certain individual defendants; and 4) whether the complaint states a cause of action under Section 1983 based on violations of the plaintiff's state constitutional rights by agency employees.

As set forth in more detail below, the court concludes that: 1) the complaint fails to state a cause of action for interference with the right to family integrity based on the emotional link between an adult and the unrelated, non-adopted child of that adult's partner; 2) the complaint states a cause of action for deprivation of equal protection where it alleges that state agency employees administered a facially neutral policy unequally as against the plaintiff, based on the plaintiff's sexual orientation and without a readily apparent justification; 3) the complaint fails to state a cause of action under Section 1983 against individual defendants where it fails to allege their personal involvement and only names them in the caption of the complaint; and 4) the complaint fails to state a cause of action under Section 1983 where it bases liability on alleged violations of the plaintiff's state constitutional rights that do not also give rise to a constitutional violation under the United States Constitution.

For the following reasons, the defendants' motion to dismiss is GRANTED in part and DENIED in part.

## FACTS

Examination of the complaint and supporting papers discloses the following relevant facts:

The plaintiff, Karen Zavatsky, is a lesbian who resides with her partner in the Town of East Haven, Connecticut. The defendants, Marcia Anderson, Ralph Arnone, Angel Miranda, Bette Randlette, Terri Lockavitch–Morabito, Dorothea Hamilton, Thomas Bisch and Linda Madigan are all employees of the DCF.

On July 9, 1989, Zavatsky's partner gave birth to a son, Terrel Alston. Since his birth, Terrel has "suffered from psychological disturbances ... and as a result has been placed ... in treatment programs ... and has been the subject of study an/or intervention by the [DCF]."

Beginning in mid-May of 1997, the DCF "had established, and documented in its files, the committed relationship between [Zavatsky] and her partner [, as well as] the existence of a family unit among the two women and [Terrel]. The complaint alleges that these facts were known to all of the defendants." From that time forward, "the [DCF] continued to receive ... and document in its files proof of the continuing existence of the ... family relationship among [Zavatsky, her partner, and Terrel]." The individual defendants knew about this documentation.

On November 26, 1997, defendants Anderson, Miranda and Bartlett submitted a petition to the Connecticut Superior Court for Juvenile Matters. The petition alleged that Terrel was neglected and was "being denied proper care and attention, physically, educationally, emotionally or morally." At the time the defendants filed this petition, Terrel was a committed patient at Hall–Brooke Hospital in Westport, Connecticut, a licensed psychiatric facility. The complaint alleges that in submitting the petition to the court, defendants Anderson, Miranda and Randlett "concealed and made no mention of" Zavatsky or the family unit comprising Zavatsky, her partner, and Terrel, despite their knowledge thereof. It further alleges that the defendants would not have treated a member of a similarly situated heterosexual couple in the same manner.

Sometime after November 26, 1997, Terrel was placed in foster care.

Between November 26, 1997 and April 1998, while Terrel was in foster care, defendants Anderson, Arnone, Miranda, Randlett, Lockavitch–Morabito and Hamil-

ton participated in the handling of Terrel's case. During this time, according to the allegations, these named defendants "refused to acknowledge the existence of the family unit of [Zavatsky, her partner, and Terrel] and deprived [Zavatsky] of her right to be a part of the conferencing and planning relating to [Terrel] and interfered with [Terrel's] familial relationship with [Zavatsky] to the detriment of [Zavatsky] and her family."

During this same time, in violation of the DCF's own rules, defendants Anderson, Arnone, Miranda, Randlett, Lockavitch–Morabito and Hamilton:

1) "failed and refused to provide [Zavatsky] and her partner with a Family Treatment Plan despite their requests."

2) "failed and refused to provide [Zavatsky] and her partner with an Individual Treatment Plan for [Terrel] until March 5, 1998."

3) "failed and refused to grant [Zavatsky] a visit with [Terrel] until long after he was taken into custody."

4) "refused to allow [Zavatsky] to see [Terrel]" on Thanksgiving or Christmas in 1997.

5) "denied [Zavatsky] telephone communication with [Terrel,]" despite repeated requests.

6) "refused to include [Zavatsky] in ... family reunification planning."

The complaint further alleges that the conduct described in paragraphs one through six above would not have taken place had Zavatsky been a member of a heterosexual couple. As a result of the conduct of defendants Anderson, Arnone, Miranda, Randlett, Lockavitch–Morabito and Hamilton, Zavatsky has suffered severe emotional distress.

On May 9, 2000, Zavatsky commenced this action.

## STANDARD

A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "merely ... assess[es] the legal feasibility of the complaint, [it does] not ... assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). When ruling on a motion to dismiss, the court must presume that the well-pleaded facts alleged in the complaint are true and draw all reasonable inferences from those facts in favor of the plaintiff. *See Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). A court may dismiss a complaint at this stage only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## DISCUSSION

### I. QUALIFIED IMMUNITY AS TO ZAVATSKY'S FEDERAL CAUSES OF ACTION

The defendants first argue that they are entitled to qualified immunity because the complaint fails to "advance a cognizable claim." In the alternative, they contend that even if the complaint states a cognizable claim the court should grant them qualified immunity because the constitutional rights that they allegedly violated were not clearly established. Zavatsky responds that the defendants' arguments are "irrelevant to [her] complaint since her contention is that facially neutral state policies and regulations were unequally applied to her."

"[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). The Supreme Court recently held that courts resolving cases in which defendants raise the defense of qualified immunity should determine first [1] whether the plaintiff has alleged a deprivation of a constitutional right at all. *See id.* If such a deprivation has occurred, a defendant may establish a qualified immunity defense if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Wilkinson v. Russell,* 182 F.3d 89, 103 (2d Cir.1999). In compliance with the Supreme Court's mandate in *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), the court first addresses whether Zavatsky has alleged the deprivation of an actual constitutional right. *See id.*

1. Deciding the constitutional question before addressing the qualified immunity question prevents standards of official conduct from remaining uncertain. *See County of Sacramento v. Lewis,* 523 U.S. 833, 840–42 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

2. The defendants have moved to dismiss this cause of action based on alleged violations of Zavatsky's constitutional right to family integrity, a right that the Second Circuit has interpreted as arising out of the Due Process Clause of the Fourteenth Amendment. *See Tenenbaum v. Williams,* 193 F.3d 581, 600 (2d Cir.1999). Zavatsky's complaint, however, ambiguously asserts that: 1) "the defendants interfered unlawfully with her First Amendment right of family *association;* " and 2) "the defendants ... violated her right to family *integrity,* which right is secured ... by the First Amendment to the Constitution and by the Constitution of Connecticut." The authority cited in the defendants' motion, with respect to Zavatsky's right to family integrity and family association, focuses solely on those rights as secured by the Due Process Clause of the Fourteenth Amendment, not the First Amendment. *See, e.g., Stanley v. Illinois,* 405 U.S. 645, 651–52, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment.");

## A. Has Zavatsky Alleged the Deprivation of a Constitutional Right?

### 1. The Right to Family Integrity

The defendants argue that the complaint does not allege a constitutional violation. Specifically, they question whether Zavatsky's relationship with her partner's child, Terrel, is of the type protected by the right to family integrity. Zavatsky does not respond to this argument.

The Second Circuit has interpreted the right to family integrity as falling within the privacy rights protected by the Due Process Clause of the Fourteenth Amendment. *See Tenenbaum v. Williams,* 193 F.3d 581, 600 (2d Cir.1999); *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996).[2] When addressing alleged substantive due process violations, courts "[f]irst ... examine the nature of the interest at stake to discern whether it is a fundamental right within the Fourteenth

*Santosky v. Kramer,* 455 U.S. 745, 753–54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (noting "[Supreme] Court's historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment."); *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996) (addressing parents' interest in custody of children in context of substantive due process); *Cecere v. City of New York,* 967 F.2d 826, 829 (2d Cir.1992) (characterizing parent's interest in custody of child as "constitutionally protected liberty interest subject to due process protection."); *Hurlman v. Rice,* 927 F.2d 74, 78–79 (2d Cir.1991) (same); *van Emrik v. Chemung County Dep't of Soc. Servs.,* 911 F.2d 863, 867 (2d Cir.1990) (same); *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (analyzing parent's interest in custody of child in context of procedural due process); *Duchesne v. Sugarman,* 566 F.2d 817, 825 (2d Cir.1977) (relying on Due Process Clause of Fourteenth Amendment). To the extent that Zavatsky has alleged a violation under the Fourteenth Amendment right to family integrity, the court reviews the defendants' motion as attempting to dismiss such action. To the extent the complaint alleges a cause of action implicating the First Amendment right to intimate/family association, *see Adler v. Pataki,* 185 F.3d 35, 42 (2d Cir.1999), the court does not address it, as the defendants have not challenged the complaint on that basis.

Amendment's protection of liberty and property." *Joyner v. Dumpson*, 712 F.2d 770, 777 (2d Cir.1983) (internal citations omitted). After resolving this inquiry, courts determine whether "the state's action has significantly infringed that fundamental right" and, if so, whether the state's interest justifies that infringement. *Id.*

▮ With respect to the first step of this analysis—whether the interest at stake is a fundamental right—it is well established that a family has "a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state." *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir.1999). This substantive due process guarantee clearly extends to cover the relationship between a parent and his or her child. *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("parents have a fundamental, constitutionally protected liberty interest in the custody of their children"). The Supreme Court has observed that relationships outside of the parent-child bond are similarly deserving of constitutional protection under certain circumstances and, in this regard, has stated that:

> Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family. The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition.

*Moore v. City of East Cleveland*, 431 U.S. 494, 504, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977).

▮ Whether the defendants have violated Zavatsky's right to family integrity necessarily hinges on whether the relationship between her and Terrel is of the type afforded protection under this Fourteenth Amendment substantive due process right. Making this determination requires the court to undertake the difficult task of defining the parameters of a family. *See*

*Wooley v. City of Baton Rouge*, 211 F.3d 913, 920 (5th Cir.2000) ("Defining the concept of 'family' and its place in our society is no elementary task."). "[T]he usual understanding of family implies biological relationships, and most decisions treating the relation between parent and child have stressed this element." *Rodriguez v. McLoughlin*, 214 F.3d 328, 337 (2d Cir. 2000). The Second Circuit has recognized that biological and marital relationships fall squarely within the concept of family integrity afforded constitutional protection. *See id.* ("[T]he liberty interest in family privacy, whether biological or marital, has its source ... in intrinsic human rights, as they have been understood in this Nation's history and tradition."). The Supreme Court has indicated that the due process guarantee embodied in the right to family integrity may even extend slightly further. *See Smith v. Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 843 n. 49, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (noting that the Court had previously used the term "parent," in the context of family integrity, to include an aunt who was also a child's "legal custodian"). This court, however, has not uncovered any reported decisions holding that the relationship between an adult and the unrelated, non-adopted child of that adult's partner is one contemplated by this substantive due process right. The only federal decision, of which this court is aware, dealing with such a relationship in this context arose in the Fifth Circuit in *Wooley v. City of Baton Rouge*, 211 F.3d 913 (5th Cir.2000).

In *Wooley*, the Fifth Circuit observed that the right to family integrity protects only those social units that "share an expectation of continuity justified by the presence of certain basic elements traditionally recognized as characteristic of the family." *See Wooley v. City of Baton Rouge*, 211 F.3d 913, 921 (5th Cir.2000). The court also recognized that "familial expectations might arise not only through biological relationships, but also through the 'intimacy of daily association' and the

resulting emotional attachments." *See Wooley v. City of Baton Rouge*, 211 F.3d 913, 922 (5th Cir.2000). The "emotional attachments" between the adult and the unrelated child in *Wooley* were beyond question. *See id.* For instance, the adult: 1) was the unrelated child's primary care giver; 2) was present at the child's birth; 3) provided the child with a home, food, clothing, and medical insurance; and 4) watched over the child at least five days per week. *See Wooley v. City of Baton Rouge*, 211 F.3d 913, 922 & n. 40. Notwithstanding these substantial bonds, the Fifth Circuit stated that "[a]n intimate, loving relationship by itself . . . is not sufficient to create a familial expectation that our society and Constitution are prepared to recognize." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 921 (5th Cir.2000). While the *Wooley* court did not definitively resolve whether the relationship at issue was protected from state interference, it affirmed the district court's conclusion that the plaintiff had failed to allege a violation of a clearly established constitutional right for the purpose of the court's qualified immunity analysis.

A review of the complaint here does indeed suggest the existence of a "committed relationship between [Zavatsky] and her partner and . . . a family unit among the two women and [Terrel]." As alleged, however, the relationship between Zavatsky and Terrel does not appear to be one previously recognized by courts as triggering the right to family integrity. For instance, the complaint does not allege that Zavatsky is biologically related to Terrel, that she is married to Terrel's mother, that she is the child's adoptive parent, that she is the child's legal custodian, or that she is a foster parent to Terrel. Contrary to *Wooley*, where the Fifth Circuit eventually concluded that the unrelated adult *failed* to assert a clearly established right

to family integrity, the complaint here does not indicate whether Zavatsky ever lived with Terrel prior to his placement in foster care; whether or how frequently she saw Terrel before he entered foster care; or whether she supported Terrel financially or emotionally before he entered foster care. The court recognizes that over the course of this case, Zavatsky could potentially answer these questions in a way that would suggest a very loving and intimate relationship between her and Terrel. Under the current state of the law, however, even such an intimate and committed relationship is insufficient to trigger the protection afforded families under the Fourteenth Amendment. *See Wooley v. City of Baton Rouge*, 211 F.3d 913, 921 (5th Cir.2000) ("[a]n intimate, loving relationship by itself . . . is not sufficient to create a familial expectation that our society and Constitution are prepared to recognize."). In light of the above, the court concludes that the link between Zavatsky and Terrel does not implicate a fundamental right within the Fourteenth Amendment's concept of liberty and property. Because the complaint fails to allege "the deprivation of an actual constitutional right at all" the court need not proceed any further with its qualified immunity analysis. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Accordingly, the defendants' motion to dismiss with respect to the count of the complaint alleging a violation of Zavatsky's right to family integrity is GRANTED.[3]

### 2. Equal Protection

Next, the defendants argue that the complaint fails to advance an equal protection violation because it does not allege that the defendants treated similarly situated individuals any differently from the way they treated Zavatsky. Zavatsky responds that the defendants' argument

---

**3.** The court observes that the defendants have also moved, pursuant to Fed.R.Civ.P. 12(b)(1), to dismiss the count of the complaint alleging a violation of Zavatsky's right to family integrity based on her lack of standing. Because

the court has concluded that Zavatsky has not alleged facts sufficient to state a cause of action with regard to this constitutional right, it chooses not to address the defendants' standing arguments.

misses the mark since "her contention is that facially neutral state policies and regulations were unequally applied to her." [4]

■■■■ The Equal Protection Clause of the Fourteenth Amendment commands that "all persons similarly situated ... be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Where governmental action does not burden "a fundamental right or involve a suspect or quasi-suspect classification such as race, sex, alienage, or national origin ... [it] is 'presumed to be valid and will be sustained if the classification ... is rationally related to a legitimate state interest.'" *Myers v. County of Orange,* 157 F.3d 66, 74 (2d Cir.1998) (quoting *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). Homosexuals are not a suspect class, and, accordingly, they are entitled only to rational basis scrutiny. *See Romer v. Evans,* 517 U.S. 620, 632, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996); *Equality Found. of Greater Cincinnati, Inc. v. City of Cincinnati,* 128 F.3d 289, 292–93 n. 4 (6th Cir.1997) (collecting cases holding that homosexuals are entitled only to rational basis scrutiny); *David v. Local 801, Danbury Fire Fighters Assoc.,* 899 F.Supp. 78, 80 (D.Conn. 1995) ("As a class, homosexuals are only entitled to rational basis review ..."). Viewed through this level of scrutiny, governmental classification is permissible so long as it is "rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). A law "born of animosity toward a class of persons," however, lacks this rational relationship. *Romer v. Evans,* 517 U.S. 620, 632, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).

■■■ Because the actions of the defendants in this case do not burden a fundamental right nor involve the classification of a suspect or quasi-suspect class, the court reviews the governmental action under a rational basis standard. The intersection of the rational relationship standard and the 12(b)(6) standard presents a difficult situation for reviewing courts. *See, e.g., Wroblewski v. City of Washburn,* 965 F.2d 452, 459 (7th Cir.1992); *Brown v. Zavaras,* 63 F.3d 967, 971 (10th Cir.1995). The reason for this is that "the rational basis standard requires the government to win if any set of facts reasonably may be conceived to justify its classification, [while] the Rule 12(b)(6) standard requires the plaintiff to prevail if relief could be granted under any set of facts that could be proved consistent with the allegations." *Wroblewski v. City of Washburn,* 965 F.2d 452, 459 (7th Cir.1992). In order to reconcile both standards, a court must take as

---

**4.** As support for this contention, Zavatsky's opposition cites the Supreme Court's recent decision in *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). In *Willowbrook,* the Supreme Court reviewed what the Seventh Circuit characterized as a "vindictive action equal protection case." *See Olech v. Village of Willowbrook,* 160 F.3d 386, 388 (7th Cir.1998). This strain of equal protection analysis, the Seventh Circuit reasoned, applies to situations where an individual, who is not a member of a vulnerable minority and therefore not a member of a "class" per se, can prove that "action taken by the state ... was a spiteful effort to 'get him' for reasons wholly unrelated to any legitimate state objective." *See id.* at 387.

In affirming the Seventh Circuit's decision in *Willowbrook,* the Supreme Court stated that it had "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000). Zavatsky's complaint, however, appears inconsistent with her opposition brief and the "class of one" situation presented in *Willowbrook* because her complaint specifically alleges that the unequal treatment she received "would not have taken place had [she] been a member of a heterosexual couple." Based on the allegations contained in her complaint, Zavatsky's equal protection violation appears to arise out of the defendants' classification of her based on her membership to the homosexual class.

true all of the complaint's allegations, including all reasonable inferences that follow, and apply those "resulting facts in light of the deferential rational basis standard." *Id.* at 460. To survive a 12(b)(6) motion in such a case, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.* A complaint's conclusory assertion that a policy is "without rational basis" is insufficient to overcome this presumption where the justification for the policy is "readily apparent." *Id.*

■ Whether the resulting facts here are sufficient to overcome the presumption of rationality is a close question. The complaint, as outlined above, alleges that "the conduct of the defendants ... would not have taken place had [Zavatsky] been a member of a heterosexual couple." By itself, this allegation may not be enough to carry Zavatsky's burden even at this early stage. *See Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir.1992). Zavatsky, however, adds that the acts of the defendants were also "in violation of the department's own rules." The inference to be drawn here is that the department's rules generally grant partners of parents whose children are in DCF custody the privileges that Zavatsky alleges were denied her. If this is the case (and the court must presume that it is for the purposes of this motion) Zavatsky has stated an equal protection violation because there would appear to be no "readily apparent" justification for the defendants' deviation from the agency's internal policy. *See Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir.1992). Without any rational basis for the defendants' classification, the court cannot, at this stage, conclude that Zavatsky's complaint fails to allege a violation of a constitutional right.

## B. Was the Constitutional Right Clearly Established?

■ The defendants' defense of qualified immunity requires that the court's analysis with regard to Zavatsky's equal protection action not end here. The court must now address whether her constitutional right not to be deprived equal protection of the laws was clearly established at the time of the alleged violation. Even where a plaintiff has alleged the deprivation of a constitutional right, the defendant may still succeed in establishing a qualified immunity defense if "(a) [his] action did not violate clearly established law, or (b) it was objectively reasonable for [him] to believe that his action did not violate such law." *Wilkinson v. Russell*, 182 F.3d 89, 103 (2d Cir.1999).

■ For the purposes of qualified immunity analysis "clearly established" means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The action of an official is not afforded the protection of qualified immunity, however, simply because no court has held the exact action in question to be unlawful. *See id.* Instead, the unlawfulness of the act must be apparent "in light of preexisting law." *See id.* In order to ascertain whether the law in this case was clearly established, the court must first determine the "level of generality at which the relevant legal rule is to be established." *Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Here, the appropriate inquiry is whether, in 1997, it was apparent that prohibiting an individual from participating in the treatment of her partner's child in DCF custody, based on that individual's sexual orientation, when agency policy allowed for such participation, was unlawful.

It is well-settled that a governmental classification that is not rationally related to a legitimate state interest is unconstitutional. *See, e.g., Cleburne v. Cleburne Living Ctr. Inc.*, 473 U.S. 432, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) ("The State may not rely on a classification whose relationship to an asserted goal is so attenuat-

ed as to render the distinction arbitrary or irrational."). Since the Supreme Court's decision in *Romer v. Evans,* 517 U.S. 620, 116 S.Ct. 1620, 517 U.S. 620 (1996), decided one year before the alleged violations of Zavatsky's constitutional rights, it has been equally well-established that this rule applies to classifications based on sexual orientation. *See Romer v. Evans,* 517 U.S. 620, 632, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (state action "inexplicable by anything but animus toward the class it affects[ ] lacks a rational relationship to legitimate state interests."). Because the defendants here classified Zavatsky when, allegedly, their own departmental rules did not, and because there appears to have been no rational basis for their classification, the court concludes that the defendants are not entitled to qualified immunity. Accordingly, the defendants' motion to dismiss the count of Zavatsky's complaint alleging deprivation of equal protection of the laws in violation of the Fourteenth Amendment is DENIED.

## II. DISMISSAL AS TO DEFENDANTS MADIGAN AND BISCH

The defendants next argue that the court should dismiss Zavatsky's causes of action as to Madigan and Bisch because "there are no allegations [of] wrongdoing against [them]." The defendants point out to the court that Madigan and Bisch "are not even mentioned in the complaint except in the caption." Zavatsky does not respond to this argument.

In the Second Circuit, "personal involvement of the defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section 1983]." *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991). A plaintiff "must allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). A plaintiff may demonstrate personal involvement within the

meaning of Section 1983 in the following ways:

> The defendant may have directly participated in the infraction. A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

*Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991). "[W]here the complaint names a defendant in the caption but contains no allegations indicating exactly how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y. 1999) (quoting *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981)).

Here, the complaint fails to allege any specific facts suggesting the personal involvement of Madigan or Bisch in the constitutional violations allegedly perpetrated against Zavatsky. In paragraphs eleven through twenty-five, where the complaint describes specific acts that allegedly infringed on Zavatsky's constitutional rights, it refers individually to each defendant. In none of those paragraphs, however, does the complaint mention Madigan or Bisch. In fact, the only portion of the complaint that identifies Madigan or Bisch by name is the caption.

While Zavatsky has not responded to the defendants' argument on this point, the court recognizes that reference to "defendants" in the plural could be construed as incorporating all of the individual defendants named in the caption.[5] Even when

---

5. The court notes that the complaint did not indicate that all the named defendants would

be collectively referred to as "defendants" throughout the pleading.

the complaint uses the plural form of this term, however, it does so only in the preliminary paragraphs when setting up facts, which, by themselves do not allege any constitutional harm or deprivation. For instance, paragraph nine of the complaint states that the "Department of Children and Families had established, and had documented in its files ... the existence of a family unit among [Zavatsky, her partner, and Terrel]. These facts were known to *all of the defendants." See* Compl. ¶ 9 (emphasis added). Mere knowledge of these facts, however, does not amount to a constitutional violation. Had the complaint alleged that Madigan and Bisch knew of the alleged unconstitutional practices and failed to remedy them, it arguably would have stated a cause of action against them under Section 1983. *See Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991). Such facts, however, are not present. Because the complaint only names Madigan and Bisch in the caption, and contains "no allegations indicating exactly how [they] violated the law or injured [Zavatsky]," *see Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y.1999), the motion to dismiss the complaint as to Madigan and Bisch is GRANTED.

### III. STATE CONSTITUTIONAL VIOLATIONS

The defendants next argue that Zavatsky "has no cognizable claims under the state constitution." Somewhat confusingly, they contend that a plaintiff cannot bring a Section 1983 action based on a violation of his or her state constitutional rights. This may be a true statement of law provided that the acts which violate a plaintiff's state constitutional rights do not *also* violate her clearly established federal rights. The court, however, reads the complaint as setting forth supplemental state law causes of action for alleged violations of Zavatsky's rights under the Connecticut Constitution. *See* Compl. ¶ 2 ("Jurisdiction ... is invoked under Section[ ] 1367(a) of Title 28[.]"); *see also* 28

U.S.C. 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction...."). To the extent that Zavatsky has brought a Section 1983 cause of action based on an alleged violation of her state constitutional rights (although the court does not believe she has done so), the defendants' motion to dismiss is GRANTED. *See Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (noting that a claim under Section 1983 must be based on an alleged violation of federal constitutional or statutory rights). To the extent that the defendants seek to dismiss the complaint's supplemental state law claims grounded in alleged violations Zavatsky's rights under the Connecticut Constitution, the motion is DENIED.

### CONCLUSION

Based on the foregoing reasons, the defendants' motion to dismiss (document no. 14) is GRANTED in part and DENIED in part.