

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-2005

# Rucci v. Cranberry

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2440

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Rucci v. Cranberry" (2005). *2005 Decisions.* Paper 1209.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1209

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2440
_____

SEBASTIAN RUCCI;
RUCCI DEVELOPMENT COMPANY, INC.,
an Ohio corporation,

Appellants

v.

CRANBERRY TOWNSHIP,
PENNSYLVANIA, a municipal corporation

Appeal from the United States District Court
For the Western District of Pennsylvania
D.C. No.: 03-cv-01327
District Judge: Honorable Donetta W. Ambrose
_____

Argued: March 30, 2005

Before: ALITO, SMITH, and ROSENN, Circuit Judges

Sebastian Rucci (Argued)
3058 Chardonnay Lane
Poland, OH 44514

　　　　Counsel for Appellants

Stephen J. Poljak (Argued)
Marshall, Dennehey, Warner, Coleman & Goggin
600 Grant Street
2900 U.S. Steel Tower
Pittsburgh, PA 15219

Counsel for Appellee

( Filed:   May 11, 2005)

_____

OPINION OF THE COURT

_____

ROSENN, Circuit Judge.

Appellants Sebastian Rucci and Rucci Development, Inc. (collectively "Rucci")

appeal the dismissal by the United States District Court for the Western District of

Pennsylvania of their Equal Protection claim stemming from the refusal of Cranberry

Township (the "Township") to approve Rucci's housing development proposal.  Rucci

also appeals the District Court's decision to abstain from hearing his Pennsylvania state

law claims pursuant to the abstention doctrine announced in Burford v. Sun Oil Co., 319

U.S. 315 (1943).[1]  The judgment of the District Court will be affirmed.

I

Because we write solely for the parties, we include only those facts relevant to the

issues presented on appeal.  Rucci endeavored to develop a housing subdivision on 15

acres of land he owns in Cranberry Township, Pennsylvania.  The land is surrounded by

single family subdivisions and is abutted by two unlimited-access roads, North Boundary

_____

[1]The District Court had jurisdiction based on 28 U.S.C. §§ 1331, 1332, 1343 and we
have jurisdiction pursuant to 28 U.S.C. § 1291.

2

and Franklin, both of which are classified as "collector" roads.[2]  These roads are bordered by lots accessed by direct driveways.

On June 9, 2003, Rucci submitted an application to the Township seeking to subdivide the property into fourteen lots.  Because the property is narrow, roadway access by an interior subdivision road is not possible.  Instead, each lot was to have direct driveway access to the existing collector roadway.[3]

The proposed fourteen-lot subdivision complied with all of the Township's ordinances except § 96.604.4 which provides that:

> No lot shall be provided with direct vehicle access to an arterial or collector street unless specifically approved by the supervisors when no alternative is possible.  Normally, only one street, driveway or point of vehicle access shall be permitted from a subdivision onto an arterial or collector street; however, two or more streets, driveways or points of vehicle access may be permitted if they will improve the traffic circulation and safety in the area.

To obtain the Township's approval of "two or more" driveways, Rucci proposed to donate land to improve traffic flow along North Boundary and Franklin roads.

The Township denied Rucci's subdivision application on the ground that he "elected to use the existing roadway for access in contravention of Subdivision § 96.604.4, and because [he] did not propose to widen and improve North Boundary and

---

[2]A "collector" road is "a street which serves or is designed to serve moderate flows of traffic and which provides for traffic movements between arterial [i.e., heavy traffic flow] and local streets or between another collector street and local streets." § 96.604.4

[3]Although the particular roadway access scheme is not germane to this appeal, Rucci's plan called for each pair of adjacent homes to share a direct access driveway.

Franklin Road."

Subsequent discussions between Rucci and the Township revealed that the Township would not approve any development having more than one driveway. As a result, Rucci filed a five-count complaint against the Township in the United States District Court. The Township filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), in response to which Rucci amended his complaint. Count I of the amended complaint sought a declaratory judgment that the Township's denial of Rucci's development plan violated his rights under the Pennsylvania Municipal Planning Code; Count II alleged a deprivation of property without just compensation in violation of the Pennsylvania Constitution, Article 1, sections 4 and 10; and Count III asserted a violation of 42 U.S.C. § 1983, more particularly the Fourteenth Amendment's Equal Protection guarantee.

The Township moved to dismiss the amended complaint. While this motion was pending, Rucci moved for, but was denied, a Scheduling Order pursuant to Fed. R. Civ. P. 16(b).[4] On May, 17, 2004, the District Court dismissed Rucci's Equal Protection claim (Count III) for failure to state a claim upon which relief can be granted. In addition, the District Court abstained under the <u>Burford</u> Abstention doctrine from hearing the state law

---

[4]Fed. R. Civ. P. 16(b) states in relevant part:
[T]he district judge . . . shall, after receiving the report from the parties under Rule 26(f) or after consulting with the attorneys for the parties and any unrepresented parties . . . enter a scheduling order that limits the time
      (1) to join other parties and to amend the pleadings;
      (2) to file motions; and
      (3) to complete discovery.

* * * *

4

claims (Counts I and II). Rucci appeals the District Court's Fed. R. Civ. P. 12(b)(6) dismissal and its decision to abstain under Burford. Additionally, Rucci raises for the first time on appeal the District Court's refusal to issue a Scheduling Order mandated by Fed. R. Civ. P. 16(b).[5]

We exercise plenary review over a district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(6). Gary v. Air Group, Inc., 397 F.3d 183, 186 (3d Cir. 2005). "In evaluating the propriety of dismissal, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Three Rivers Ctr. for Indep. Living v. Hous. Auth. of the City of Pittsburgh, 382 F.3d 412, 419 (3d Cir. 2004) (citation and internal quotations omitted).

We review the District Court's decision to abstain for abuse of discretion, but its analysis of the law on abstention is subject to plenary review. Chiropractic Amer. v. Lavecchia, 180 F.3d 99, 103 (3d Cir. 1999).

Rucci claims the Township denied him equal protection of the laws by rejecting his development proposal. According to Rucci, his property is similarly situated to that of other landowners who have direct driveway access to a collector roadway and there is no rational basis for disparate treatment.

---

[5]Because this Court has consistently held that it will not consider issues raised for the first time on appeal, Harris v. City of Phila., 35 F.3d 840, 845 (3d Cir. 1994), we reject Rucci's Scheduling Order appeal.

5

Because the Township ordinance does not burden a fundamental right nor involve the classification of a suspect class, the Court reviews the governmental action under a rational basis standard. Angstadt v. Midd-W. School Dist., 377 F.3d 338, 344 (3d Cir. 2004). Under rational basis review, an ordinance will withstand an Equal Protection challenge if it is "reasonable, not arbitrary, and bears a rational relationship to a (permissible) state objective." Congregation Kol Ami v. Abington Township, 309 F.3d 120, 133 (3d Cir. 2002) (internal quotation omitted). Moreover, the constitutionality of the ordinance is presumed, City of New Orleans v. Dukes, 427 U.S. 297, 303 (1979), and will not be set aside if any state of facts reasonably may be conceived to justify it. McGowan v. Maryland, 366 U.S. 420, 425-26 (1961).

The Township contends the ordinance is designed to improve traffic safety. Limiting driveway access to collector and arterial roads is, indeed, a logical way to improve traffic safety and circulation because it restricts the number of access points from which vehicles can approach the heavily traveled roads. Thus, the ordinance satisfies deferential rational review.

Having satisfied rational review, this case presents a situation where the ordinance's presumption of rationality is in tension with the liberal pleading standard of Fed. R. Civ. P. 12(b)(6). To accommodate both interests, we accept as true all of the complaint's allegations, including all reasonable inferences that follow, and assess whether they are sufficient to overcome the presumption of rationality that applies to the

6

ordinance.  See e.g., <u>Wroblewski v. City of Washburn</u>, 965 F.2d 452, 459 (7th Cir. 1992);

<u>Zavatsky v. Anderson</u>, 130 F. Supp. 2d 349, 356 (D. Conn. 2001).

According to this calculus, Rucci's Equal Protection claim is insufficient to

overcome the ordinance's presumption of rationality.  To mount a successful Equal

Protection challenge to a zoning ordinance, plaintiff must prove that the Township treated

him differently from similarly situated landowners without any reasonable basis.

<u>Congregation Kol Ami</u>, 309 F.3d at 137.  However, Rucci fails to allege sufficient facts to

establish that he is similarly situated to other landowners with direct driveway access.

Although Rucci alleges his property is "practically surrounded by single family

subdivisions," he never states that any subdivision has more than one point of vehicle

access to the collector roadway.  What he <u>does</u> allege regarding area landowners is that

"directly south of the property is a subdivision with internal street access from Franklin

Road, north and east of the property are single family homes, and to the east of the

property is a public park."  However, this fails to allege that Rucci is treated disparately.

Similarly, Rucci's allegation that "many other landowners have direct driveway

access to North Boundary and Franklin Road" is insufficient without alleging that they

are part and parcel of a housing subdivision.  See <u>Schuylkill Energy Res., Inc. v. Pa.</u>

<u>Power & Light Co.</u>, 113 F.3d 405, 417 (3d Cir. 1997) ("We are not . . . required to accept

as true unsupported conclusions and unwarranted inferences.").  Nowhere in the

complaint does Rucci identify any other landowner who subdivided property and yet was

7

permitted more than one vehicle access point to a collector or arterial road. For all we are told, each lot along North Boundary and Franklin roads with direct driveway access is a single lot rather than a subdivision. Without identifying another subdivision with multiple vehicle access points to a collector or arterial road, Rucci has failed to establish that he is similarly situated. See City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256 (3d Cir. 1998) ("[The court cannot] 'assume that the [plaintiff] can prove facts that it has not alleged . . . .'") (quoting Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983)).

Because Rucci fails to allege, as a preliminary matter, that the ordinance differentially regulates his property from the property of other landowners, and because the complaint cannot defeat rational-basis review,[6] we affirm the District Court's dismissal of the Equal Protection claim under Fed. R. Civ. P. 12(b)(6).[7]

---

[6]Rucci suggested at oral argument that he is a "class of one," irrationally treated differently from all other property owners in the Township. See Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam); Eichenlaub v. Township of Indiana, 385 F.3d 274, 286 (3d Cir. 2004). Rucci fares no better under this theory because the Township has numerous rational bases for the ordinance in question. See Bizarro v. Miranda, 394 F.3d 82, 88-89 (2d Cir. 2005). The ordinance sets out a bright-line rule, and this makes it easier for the ordinance to be administered. In addition, the ordinance includes a procedure by which applicants can seek a variance, which offers added protection against irrational results. The ordinance also advances a legitimate state interest in safety, reducing the number of cars (at least at the margin) that can back out onto busy streets.

[7]The Dissent insists that Rucci's equal protection claim is "unripe" for judicial review. According to the Dissent, Rucci's failure to seek a modification or waiver from the Township rendered his claim nonjusticiable because a federal court cannot determine whether a landowner has been dissimilarly treated or whether such treatment is rationally related to a legitimate government purpose until the Township has fully and finally

The second issue Rucci raises on appeal concerns the District Court's decision to abstain under <u>Burford</u> from hearing the state law claims. The abstention doctrine, "under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." <u>Allegheny County v. Frank Mashuda Co.</u>, 360 U.S. 185, 188-89 (1959). Designed "to soften the tensions inherent in a system that contemplates parallel judicial processes[,]" <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 11 n.9 (1987), abstention is warranted "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." <u>Frank Mashuda Co.</u>, 360 U.S. at 188-89.

Under <u>Burford</u> Abstention, a district court may decline to exercise or postpone jurisdiction, even diversity jurisdiction, "where a difficult question of state law is presented which involves important state policies or administrative concerns." <u>Heritage Farms, Inc. v. Solebury Township</u>, 671 F.2d 743, 746 (3d Cir. 1982); <u>Grode v. Mut. Fire,</u>

---

considered how a specific landowner is treated under the zoning scheme. <u>See</u> <u>Taylor Investments, Ltd. V. Upper Darby Twp.</u>, 983 F.2d 1285, 1295 (3d cir. 1993). None of the parties has raised a ripeness issue on appeal. Although we agree with the Dissent that this court may raise the issue <u>sua sponte</u>, where, as here, the issue of ripeness goes only to prudential considerations as opposed to constitutional concerns, we are free to exercise jurisdiction over the case. <u>See</u> <u>Lucas v. South Carolina Coastal Council</u>, 505 U.S. 1003, 1012-13 (1992) (noting that a takings plaintiff's failure to apply for a special permit "goes only to the prudential 'ripeness'" and concluding that prudence requires the Court hear the merits of the case); <u>see also</u>, <u>Simmonds v. I.N.S.</u>, 326 F.3d 351, 358 n.7 (2d Cir. 2003). Because we see no error in the District Court's dismissal of Plaintiff's action on the ground of an absence of equal protection, we choose to exercise jurisdiction for reasons of finality and judicial economy.

Marine & Inland Ins. Co., 8 F.3d 953, 956 (3d Cir. 1993).

Rucci's state law claims involve Pennsylvania's Municipal Planning Code and eminent domain procedures. The District Court found Burford Abstention appropriate based on the "purely local," state-law nature of these issues, as well as the fact that no federal claims of any kind remained once it dismissed the Equal Protection challenge. Rucci counters that "the Pennsylvania Municipalities Planning Code is not the type of uniform and elaborate statewide regulation necessary for Burford Abstention, and there is no danger that a federal court decision in this case will disrupt Pennsylvania's policies or plans with respect to land use."

The question before us, then, is whether the District Court's decision to abstain from purely state law challenges to the Pennsylvania Municipal Planning Code and eminent domain procedures was an abuse of discretion. We hold that it was not.

This Court has noted that "land use law is one of the bastions of local control, largely free of federal intervention." Congregation Kol Ami, 309 F.3d at 135-36. Indeed, as the Supreme Court has recognized, "[t]he power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities. . . . [T]he courts generally have emphasized the breadth of municipal power to control land use. . . ." Schad v. Borough of Mount Ephraim, 452 U.S. 61, 68 (1981); see also FERC v. Miss., 456 U.S. 742, 768 n.30 (1982) ("[R]egulation of land use is perhaps the quintessential

10

state activity."); <u>Izzo v. Borough of River Edge</u>, 843 F.2d 765, 769 (3d Cir. 1988) ("Land use policy customarily has been considered a feature of local government and an area in which the tenets of federalism are particularly strong.").

For this reason, federal courts are generally loathe to interfere with land use regulation. <u>Izzo</u>, 843 F.2d at 769 ("Federal courts have expressly disavowed any desire to sit as a statewide board of zoning appeals hearing challenges to actions of municipalities."). Because federal court intervention in this case might disrupt an important Pennsylvania state policy, and because all federal claims have been dismissed, we perceive no abuse of discretion in the District Court's abstention from hearing Rucci's Municipal Planning Code claim.

Like land use regulation, eminent domain is another distinctly state-law matter. <u>La. Power & Light Co. v. City of Thibodaux</u>, 360 U.S. 25, 28-29 (1959) (remarking that eminent domain was "intimately involved with state prerogative" and noting the "sensitive nature" of federal court intervention in a state's eminent domain system). Indeed, the state-regulated nature of eminent domain is illustrated by Pennsylvania's extensive Eminent Domain Code, 26 P.S. § 1-101 <u>et seq.</u>

The Pennsylvania Eminent Domain Code supplies "a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages therefor . . . ." 26 P.S. § 1-303. Moreover, "the Eminent Domain Code fully protects the rights of the property owner and guarantees to him the

constitutional safeguards to which he is entitled, including appropriate appellate review."

Coles v. City of Phila., 145 F. Supp. 2d 646, 652 (E.D. Pa. 2001). Given the substantial

and highly-developed nature of Pennsylvania's eminent domain procedures, it is not

inappropriate for a district court to abstain from hearing such claims. Grode, 8 F.3d at

956 ("Burford abstention is usually applied to . . . state eminent domain procedures.").

Accordingly, the District Court did not abuse its discretion by abstaining under Burford

from hearing Rucci's state law claims.[8]

## II

For the reasons set forth above, the District Court's dismissal of Rucci's Equal

Protection claim, as well as the Court's decision to abstain from hearing the state law

---

[8]In Heritage Farms, Inc. v. Solebury Township., 671 F.2d 743, 748 (3d Cir. 1982), we held that Burford Abstention was inappropriate because state land uses were not being attacked, but rather a single Township's alleged illegal application of its policies. Although the case at bar implicates a single Township as well, Heritage is readily distinguishable because it was not merely a land use case; it contained serious allegations that local government officials fraudulently acted under color of law for their own personal gain to thwart those who would compete with their private business venture. The Heritage Court admonished district courts "faced with a claim arising out of land use questions, to examine the facts carefully to determine what the essence of the claim is. If it is an unlawful conspiracy like the one alleged here, the mere presence of land use issues should not trigger a mechanical decision to abstain." The implicit instruction is that where, as here, the only issue present is a land use question, Burford Abstention may be appropriate. Izzo v. Borough of River Edge, 843 F.2d 765 (3d Cir. 1988), is not to the contrary. In that case, as here, the district court abstained from deciding a land use dispute over a zoning ordinance. But the Izzo Court found an abuse of discretion because Federal Communications Commission regulations preempted the zoning ordinance in question. See id. at 768. The regulations "infused into the proceedings a federal concern, a factor which distinguishes the case from a routine land use dispute having no such dimension." Id. See also id. at 769 ("If only state law applies, Burford abstention carries more weight than when federal interests require evaluation as well.").

12

claims under the <u>Burford</u> Abstention doctrine, will be affirmed.

*Rucci v. Cranberry Township*, Case No. 04-2440

SMITH, *Circuit Judge*, dissenting.

Because I believe the majority errs in failing to consider whether Rucci's equal protection claim is ripe and in holding that abstention was proper in this case, I respectfully dissent.

This Court has repeatedly said that we must consider ripeness *sua sponte*. In *Acierno v. Mitchell*, 6 F.3d 970 (3d Cir. 1993), we considered whether a landowner's equal protection claim was ripe even though the county, which had denied the landowner a permit, raised ripeness for the first time on appeal. We explained that, "[b]ecause issues of ripeness involve, at least in part, the existence of a live 'Case or Controversy,' we . . . must determine whether the issues are ripe for decision in the 'Case or Controversy' sense. Further, to the extent that questions of ripeness involve the exercise of judicial restraint from unnecessary decision of constitutional issues, the Court must determine whether to exercise that restraint." *Id*. at 974 (quoting *Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 138 (1974)). Recently, in *Lauderbaugh v. Hopewell Township*, 319 F.3d 568 (3d Cir. 2003), also an equal protection land-use case, we considered ripeness even though that issue was raised by the Township for the first time on appeal. *Id*. at 574 (citing, inter alia, *Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 535 (3d Cir. 1988) (Becker, J.) ("This Court has recognized that considerations of ripeness are sufficiently important that we are required to raise the issue *sua sponte* even though the

14

parties do not.")). *See also Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003) (Rosenn, J.) ("[C]onsiderations of ripeness are sufficiently important that the court is required to raise the issue *sua sponte* even though the parties do not.") (citation omitted).

Our landmark land-use decision in *Taylor Investments, Ltd. v. Upper Darby Twp.*, 983 F.2d 1285 (3d Cir. 1993), clarifies why we must consider ripeness *sua sponte* and why Rucci's case is unripe. *Taylor* held that, "[u]ntil the Township has fully and finally considered how a specific landowner is treated under the zoning scheme, a federal court cannot determine whether the landowner has been dissimilarly treated nor whether such treatment is rationally related to a legitimate government purpose." *Id*. at 1295. Citing *Taylor*, the District Court reasoned that Rucci's equal protection claim was unripe because he failed to seek a "modification or waiver" from the Township. The District Court nevertheless considered the merits of that claim because Rucci alleged that further efforts to persuade the Township would have been futile. However, as Rucci conceded at oral argument before this Court, there is no futility exception to ripeness requirements in the Third Circuit. Because we consistently have said we "must" consider ripeness *sua sponte*, and because *Taylor* holds that without full and final consideration we "cannot" determine whether there has been an equal protection injury, I would hold Rucci's equal protection claim non-justiciable.[9]

_____

[9]At oral argument, Rucci for the first time alleged that he effectively sought a "modification or waiver" from the Township in his application, and therefore he received "full and final" consideration. The record suggests otherwise. Rucci's application to the Township plainly argues that his subdivision plan *meets* the driveway ordinance requirements.

15

I believe the majority also errs in its abstention analysis. Under *University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265, 269-70 (3d Cir. 1991), we review a district court's decision to abstain for abuse of discretion. *University of Maryland* emphasized, however, that "a district court has little or no discretion to abstain in a case that does not meet traditional abstention requirements," *id*. at 270-71, and whether a case "falls in the area within which the district court may exercise discretion is therefore a matter of law, reviewable on a plenary basis." *Id*. at 271. I fail to see where the majority opinion conducts plenary review of the District Court's initial categorization of this case. In my opinion, Rucci's case falls short of traditional abstention requirements, and therefore the District Court abused its discretion in abstaining.

According to *University of Maryland*, *Burford* abstention is appropriate "where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to matters of substantial public concern.'" *Id*. at 270 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989)). *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743 (3d Cir. 1982), emphasized that Pennsylvania's land-use code does *not* implicate this central *Burford* concern. *Id*. at 747-48 ("[t]he Pennsylvania Municipalities Planning Code does not involve the type of uniform and elaborate statewide regulation [at issue in *Burford*]. Furthermore, there is no danger that a federal court decision in this case will disrupt Pennsylvania's policies or plans with respect to land use. . . ."). Later, in *Izzo v.*

*Borough of River Edge*, 843 F.2d 765 (3d Cir. 1988), we stated that "[c]oncededly, a system of land use regulation may be of special interest to a state and municipality; however, the scheme at hand does not approach the complexity of the one under scrutiny under *Burford*."[10] In *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195 (3d Cir. 1992), we explained that *Heritage Farms* and *Izzo* "admonish district courts not to dismiss claims merely because they may involve land use issues." *Id*. at 1203. That seems a fair characterization of what the District Court did here. Unlike the majority, I do not believe the lack of a federal issue in the present case (assuming diversity jurisdiction itself does not constitute a federal interest) tips the scales in favor of abstention. Neither *Heritage Farms* nor *Izzo* suggests that the presence or absence of a federal issue is dispositive. As *University of Maryland* shows, the heart of the "traditional" *Burford* inquiry – tracing its heritage back to *Burford* itself – is whether coherent state policy will be disrupted. Whether there is a federal interest in the case is ancillary to that question. Here, with the former, central question answered clearly in the negative, I find it insufficient to argue that a negative answer to the latter, auxiliary question sweeps this case into traditional *Burford* territory. Accordingly, I would hold that abstention by the

---

[10]The majority reasons, as did the District Court, that Rucci's inverse condemnation claim implicates Pennsylvania's Eminent Domain Code, which it maintains erects "substantial and highly-developed" procedures for condemnation of property. But no such condemnation occurred here. Rucci's state claims are under the Municipalities Planning Code, discussed above, and under the Pennsylvania Constitution for *inverse* condemnation. Unlike a traditional condemnation, an inverse condemnation is an indirect, regulatory condemnation – here allegedly effected by the Cranberry Township subdivision ordinance, not a statewide code.

17

District Court was error.

For the foregoing reasons, I respectfully dissent.