

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-19-2003

# Peachlum v. City of York PA

Precedential or Non-Precedential: Precedential

Docket No. 02-2977

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Peachlum v. City of York PA" (2003). *2003 Decisions.* Paper 407.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/407

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed June 19, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2977

SYBIL PEACHLUM,
                                        Appellant

v.

CITY OF YORK, PENNSYLVANIA; CITY OF YORK BUREAU
OF PERMITS AND HEALTH LICENSING; FRANCIS M.
NEWHAMS, in his capacity as Director of Bureau of
Permits and Health Licensing; CHARLES H. ROBERTSON,
in his official capacity as Mayor of the City of York,
Pennsylvania

Appeal from the United States District Court
For the Middle District of Pennsylvania
D.C. No.: 99-cv-02061
District Judge: Honorable Yvette Kane

Argued: April 10, 2003

Before: BARRY and ROSENN, *Circuit Judges*,
POLLAK, *District Judge**

(Filed: June 19, 2003)

---

* Honorable Louis H. Pollak, Senior District Judge for the United States
District Court for the Eastern District of Pennsylvania, sitting by
designation.

Mathew D. Staver (Argued)
Liberty Counsel
210 East Palmetto Avenue
Longwood, FL 32750
*Counsel for Appellant*

Donald B. Hoyt (Argued)
Steven M. Hovis
Office of City Solicitor
One Marketway West, 3rd Floor
York, PA 17401
*Counsel for Appellees*

## OPINION OF THE COURT

*ROSENN*, Circuit Judge.

This appeal primarily concerns the ripeness of facial and as-applied First Amendment challenges to a municipal ordinance regulating the size, content, and appearance of lawn signs in residential districts.[1] Sybil Peachlum sued the City of York, Pennsylvania, for declaratory and injunctive relief and damages for attempting to bar her from posting a freestanding 3-1/2 foot by 5 foot sign in her front yard. The sign depicted an anthropomorphized peach holding a newspaper with the headline: "Peachy News. Jesus is Alive." Neon lights, frequently illuminated, rimmed the sign.

Peachlum filed her suit in the United States District Court for the Middle District of Pennsylvania, challenging the First Amendment constitutionality of the ordinance, both facially and as applied to her. She further alleged that the ordinance's application to her violated the Free Exercise and the Equal Protection clauses of the Constitution. Lastly, she asserted that the City, by insisting that she pay a $350 fee in order to appeal the decision of the City's Zoning Officer (ZO) to the Zoning Hearing Board (ZHB), violated the Due Process clause.

---

1. The ordinance also regulated signs in commercial and industrial districts.

The District Court, observing Peachlum's failure to appeal the determination of the ZO to the ZHB, which, under the York municipal code had the final say on disputes involving the ordinance, dismissed the suit as unripe. Peachlum timely appealed. We vacate the Order of Dismissal.

## I.

Over a period of nearly ten years, the City had repeatedly cited Peachlum for numerous separate violations of the ordinance, including its bans on directly illuminated signs and on freestanding business signs in residential districts. The ordinance, however, pursuant to § 1308.02, exempted certain types of signs from its strictures, including: directional signs, resident identifiers, and flags. Various forms of commercial signs, including those advertising homes for sale or garage sales, were also exempted, as were holiday signs and memorial or historical signs.[2] Unexempted signs had to comply with all other sign regulations, and, moreover, required a permit even if they did not run afoul of any of the ordinance's express prohibitions. Hence, signs falling under the exemptions provision could be directly illuminated without incurring penalty and could also be maintained without a permit: "No permit shall be required and the regulation of this article shall not apply to any of the [enumerated exempted types of signs.]" Peachlum, according to the City, did not qualify for an exemption.

Peachlum now challenges the First Amendment constitutionality of the ordinance on the grounds that (1) by exempting certain forms of speech based on content, it is overbroad; (2) by forbidding, without a permit, various forms of lawn signage, the ordinance simply forecloses too much public speech; (3) the terms of the ordinance, in

---

2. Peachlum's dispute with York spans two different iterations of the sign ordinance. A new version, § 1309, was enacted in 1995 and replaced § 1308 (§ 1308.02, the exemptions provision, became § 1309.04); although most of the prohibitions and allowances of the ordinance remained constant, an exemption was added in the later version for signs with personal expressions of no more than two square feet and for signs of religious significance.

particular the exemptions provision, are too vague for a reasonable person to comprehend; and (4) by requiring a permit before the posting of certain types of signs, the ordinance is a prior restraint.

In late 1993, Peachlum first erected her sign on her front lawn in York. The City's ZO advised her to remove it and cited her for violations of §§ 1308.02, 1308.06(a), and 1308.14(a) of the sign ordinance in effect at that time. Specifically, she was cited under § 1308.02 because a permit was required before placement of any type of sign other than those listed therein; under § 1308.06 because it did not fall within a list of enumerated types of signs that were permitted within residential districts[3]; and under § 1308.14(a) because her sign was directly illuminated in a residential district.

She then applied for a permit pursuant to § 1308.02 and that was denied; the ZO held that he could not issue a permit for a sign which was independently unlawful under §§ 1308.14(a) and 1308.06(a) of the ordinance. Peachlum never appealed any of these ZO enforcement actions to the ZHB, although she was informed of her right to do so on the cease and desist notice. She subsequently complied with the order to remove the sign, but re-installed it in late 1994. In 1995 the City filed a civil complaint under the ordinance, charging Peachlum with violations of §§ 1308.14(a) and 1308.06(a). A District Justice entered judgment against her and assessed a fine in the amount of $539.[4]

Later in 1995, the City enacted a slightly different version of the sign ordinance, § 1309, replacing §1308. It rewrote § 1308.02 as § 1309.04, which, in addition to most of the old exemptions, newly exempted signs of personal expression of no more than two square feet in area, and

---

3. Section 1308.06 permitted the following signs in residential districts: signs advertising wholesale produce sales; professional signs; announcement boards; unobtrusive business signs; signs promoting political candidates; and temporary signs advertising upcoming events.

4. It does not appear that Peachlum meaningfully contested the matter before the District Justice at this time or in any subsequent state court proceeding.

signs of religious significance. At no time was Peachlum's sign deemed to fall within these new exemptions.

Despite all the City's legal actions, Peachlum kept up her sign. In May 1998 the City's ZO again issued a cease and desist order, based on provisions of the modified ordinance. The cease and desist order alleged that she was in violation of the following provisions of the ordinance: Section 1309.09(a)(2) allowed the placement of a "nonilluminated announcement or professional sign" only if the sign was fixed flat against the building or inside a window with the size of the sign not to exceed two square feet. Section 1309.09(a)(4) banned illuminated signs in residential districts; § 1309.09(a)(5) limited the size and position of freestanding business signs in residential districts; and § 1309.09(a)(6) forbade home office signage in a residential district.[5]

In mid-1998, the City filed another civil complaint against Peachlum, based upon alleged violations of §§ 1309.09(a)(4) and (5) of the City ordinance. These sections pertained, respectively, to the illumination of signs in a residential district and to the maintenance of freestanding business signs in a commercial district. In September 1998, a District Justice entered judgment against Peachlum and fined her $537. The sign remained posted and, in April 1999, the ZO issued another cease and desist order for zoning violations.[6] Specifically, he found her in violation of §§ 1309.09(a)(4) and (5).

---

5. Peachlum was also alleged to be in violation of several other provisions which primarily concerned the maintenance of a commercial establishment in a residential district. These alleged violations do not concern us. We are not concerned with whether Peachlum was in violation of ordinance provisions pertaining to whether she ran a business out of her home. It is, however, relevant whether Peachlum's sign was itself commercial, inasmuch as commercial speech may be subject to a stricter ripeness test than non-commercial speech. But our review of the record here shows scant evidence that the sign was related to any business operation of Peachlum's.

6. Also in April 1999, Peachlum's sign was vandalized, but she had it repaired, encased in glass, and put upon posts embedded in concrete. She received a notice that same month that the erection of such a structure required a building permit.

In May 1999 Peachlum attempted to appeal the ZO's April enforcement action to the ZHB. She mailed her appeal without the required $350 fee, noting that she could not afford it, and offering financial documentation if the Board so desired. The Board flatly told her she could not file without paying the $350 fee, stating: "Until the fee is submitted, the City will consider the application incomplete and will take no action on this appeal." She filed a second appeal, in which she claimed *in forma pauperis* status. Again, the Board did not consider this appeal because the fee was not paid. The City stated it will continue to seek fines on a bi-weekly basis against Peachlum if the sign is not removed. In November 1999, Peachlum filed this action for declaratory and injunctive relief and for damages in the District Court.[7]

## II.

### A.

Peachlum argues that she was not given adequate opportunity to argue the ripeness issue before the District Court, because the issue was not raised until the day of her hearing on the merits of her claim. This court has recognized that considerations of ripeness are sufficiently important that the court is required to raise the issue *sua sponte* even though the parties do not. *Felmeister v. Office of Attorney Ethics, a Div. of the New Jersey Administrative Office of the Courts*, 856 F.2d 529, 535 (3d Cir. 1988). Moreover, Peachlum was able to argue this point in her motion for reconsideration to the District Court. Finally, and significantly, inasmuch as we now endorse Peachlum's position on the issue, and hold that her claim is indeed ripe for disposition, whether she was given an opportunity to argue the point is moot.

---

7. The District Court had jurisdiction over Peachlum's constitutional claim pursuant to 28 U.S.C. § 1331. This court has appellate jurisdiction over the Order of Dismissal of the District Court pursuant to 28 U.S.C. § 1291. Review of a ripeness determination is plenary. *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994).

B.

"The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief." *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994). "In some circumstances the ripeness requirement is drawn from Article III limitations on judicial power and in others from prudential limitations." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001). The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, *Philadelphia Federation of Teachers, American Federation of Teachers, Local 3, AFL-CIO v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998), and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine. *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99, 105 (1977).

The following considerations underpin the ripeness doctrine: are the parties in a sufficiently adversarial posture to be able to present their positions vigorously; are the facts of the case sufficiently developed to provide the court with enough information on which to decide the matter conclusively; and is a party genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one. *See Erwin Chemerinsky, Federal Jurisdiction* § 2.3.1 (1989).

Accordingly, the ripeness doctrine requires that the challenge grow out of a "real, substantial controversy between parties" involving a "dispute definite and concrete." *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298 (1979) (citation omitted). The question in each case is whether the facts alleged show that there is a substantial controversy, between parties having adverse legal interests, "of sufficient immediacy and reality" to justify judicial resolution. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The Supreme Court, in *Abbott Labs.*, incorporated the foregoing considerations into a two-step test for determining ripeness, which looks at: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of

withholding court consideration." *Abbott Labs.*, 387 U.S. at 149.

Where a dispute arises under circumstances that permit administrative review, as in the case here, final administrative determination is favored under the ripeness doctrine. The basic reason for such determination is to prevent the courts, "through avoidance of premature adjudication, from entangling themselves in abstract disagreements" over administrative problems, and to enable the agency to proceed without judicial interruption until an administrative determination has been formalized. *Abbott Labs.*, 387 U.S. at 148. In many instances, a claim will be deemed unfit for adjudication until administrative appeals have been completed, because the administrative tribunal might work out the intricacies of an area of law in which it enjoys special expertise. *Id.*

Here, the defendants contend that this case is not ripe for judicial consideration because the ZHB has not yet had an opportunity to render a final adjudication of Peachlum's claims. They assert that deferral of a decision by the court does not result in a hardship to Peachlum and there is no prior restraint, as her sign has been displayed since 1994. However, the issue raised here involves not the enforcement of an ordinary municipal regulation but one concerning both a facial and "as applied" First Amendment challenge to the City ordinance. Whether the absence of final adjudication by a municipal agency of the validity of a city ordinance precludes judicial consideration of First Amendment challenges to it is one of first impression. Peachlum asserts that the District Court failed to address the merits of these claims.

A First Amendment claim, particularly a facial challenge, is subject to a relaxed ripeness standard.[8] *Dougherty v.*

---

8. At oral argument, the City suggested that this claim was purely a matter concerning its prohibition of illuminated signs and had nothing to do with the speech content of the sign. Clearly, however, under the Supreme Court's opinion in *City of Ladue v. Gilleo*, 512 U.S. 43 (1994), content neutral limitations on yard signs are subject to a stringent First Amendment analysis for fear that broad limitations on yard signs would stifle an important channel of public speech. Second, the City ignores

*Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002). The courts have repeatedly shown solicitude for First Amendment claims because of concern that, even in the absence of a fully concrete dispute, unconstitutional statutes or ordinances tend to chill protected expression among those who forbear speaking because of the law's very existence. This concern is particularly acute with regard to facial challenges to a statute or ordinance. *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

Peachlum suggests that our opinion in *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir. 1990), supports her claim to ripeness. Therein, this court, interpreting *Abbott Labs.*, set forth a three-part test for the appropriateness of declaratory relief in a situation where ripeness is contested. The *Step-Saver* test asks three questions: 1) whether the parties' interests are sufficiently adverse; 2) whether the court can issue a conclusive ruling in light of potentially evolving factual developments; and 3) whether the decision will render practical help to the parties. *Step-Saver*, 912 F.2d at 647. "The *Step-Saver* rubric is a distillation of the factors most relevant to the *Abbott Labs* considerations.'" *NE Hub Partners*, 239 F.3d at 342 (citation omitted).

As Peachlum acknowledges, however, the *Step-Saver* analysis is tailored to address *pre-enforcement* actions. *See Presbytery*, 40 F.3d at 1463 ("We have adopted a three part test in determining whether we will engage in pre-enforcement review in the context of a declaratory action."); *cf. Lauderbaugh v. Hopewell Township*, 319 F.3d 568, 575 (3d Cir. 2003) (declining to apply *Step-Saver* factors in case where enforcement was pending). The courts have allowed somewhat liberally constitutional challenges under circumstances where the government has not initiated

---

the exemption under § 1309.04 of certain forms of speech, *based on content*, from the ordinance's other limitations, including the illumination ban. Thus, an action brought under any provision of the sign ordinance implicates the content based exemption provision. *See R.A.V. v. St. Paul*, 505 U.S. 377, 420-22 (1992).

enforcement proceedings. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (citation omitted) (facial infirmity in connection with "[r]easonable predictability of enforcement or threats of enforcement" may be enough to ripen a claim.).

Our stance toward pre-enforcement challenges stems from a concern that a person will merely comply with an illegitimate statute rather than be subjected to prosecution. *See Presbytery*, 40 F.3d at 1467 (*quoting Steffel v. Thompson*, 415 U.S. 452, 458 (1974)) (holding that the case was ripe despite the state's failure to initiate a prosecution; it is not necessary that petitioner first expose himself to prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights). Or, the government may choose never to put the law to the test by initiating a prosecution, while the presence of the statute on the books nonetheless chills constitutionally protected conduct. *See* 13A *Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure* § 3532.5 (2d ed. 1984) (in pre-enforcement context, courts are primarily concerned with the chilling effect occasioned by the mere existence of the statute, even absent formal prosecution thereunder).

Therefore, in cases involving fundamental rights, even the remotest threat of prosecution, such as the absence of a promise not to prosecute, has supported a holding of ripeness where the issues in the case were "predominantly legal" and did not require additional factual development. *See Presbytery*, 40 F.3d at 1464.[9]

The concerns we face in circumstances where enforcement actions are ongoing, but where administrative finality is not yet achieved, are different. The *Step-Saver* analysis is primarily concerned with whether the parties are in a sufficiently adversarial posture and whether the

---

9. Similarly, with respect to prior restraint challenges "our cases have long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755-56 (1988).

dispute has undergone sufficient factual development to allow judicial resolution. In most post-enforcement actions those criteria will surely have been met. The question here is whether the courts should intervene as a prudential matter in a dispute that is in the process of being pursued administratively. *See Armstrong World Industries, Inc. by Wolfson v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992) ("the [Step-Saver] factors are not exhaustive of the principles courts have considered in evaluating ripeness challenges," and we must independently consider the judicial preference for administrative finality).

As we discuss in Part II.D., a *facial* First Amendment challenge is not normally subject to administrative finality analysis under any circumstances. Depending on circumstances, however, there may be some value in permitting an administrative body to resolve an ongoing dispute in "as applied" challenges once enforcement proceedings have begun. In post-enforcement circumstances, there may be little need to hasten administrative resolution because the claim is already in the process of being resolved. However, we note that this court has never previously imposed an administrative finality requirement on claims involving free speech rights. We recognize that free speech may be suppressed and a concrete injury may occur merely as a result of the initiation of enforcement proceedings. We do not now hold that administrative finality applies in such cases. However, even if the administrative finality doctrine is applicable to Peachlum's First Amendment claims, her claims are, for the reasons hereafter set forth, ripe.

In determining ripeness in a post-enforcement context, we must take into account prudential considerations such as "the degree to which postponing federal judicial review would have 'the advantage of permitting state courts further opportunity to construe [the challenged provisions], and perhaps in the process materially alter the question to be decided.' " *Armstrong World Industries, Inc. by Wolfson v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992) (*quoting Renne v. Geary*, 501 U.S. 312, 323 (1991)). "Whether a question is fit for judicial review depends upon factors such as whether the agency action is final . . . and whether further

administrative action is needed to clarify the agency's position, for example, when the challenged prescription is discretionary so that it is unclear if, when or how the agency will employ it." *Felmeister*, 856 F.2d at 535-36.

However, ripeness is not to be confused with exhaustion. *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 192 (1985) ("[T]he question whether administrative remedies must be exhausted is conceptually distinct . . . from the question whether an administrative action must be final before it is judicially reviewable."); *United States ex rel. Ricketts v. Lightcap*, 567 F.2d 1226, 1232 (3d Cir. 1977) ("The doctrines of ripeness for adjudication and of exhaustion of administrative remedies are distinct and not interchangeable."). Although courts prefer administrative finality, *Lauderbaugh*, 319 F.3d at 575, the issue is whether a provisional administrative decision "has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs.*, 387 U.S. at 149. "The finality rule is designed to enforce this requirement, not to require the exhaustion of administrative remedies." *Lauderbaugh*, 319 F.3d at 575. Thus, where a party suffers a concrete injury prior to final administrative disposition, such as fines or unreasonable appeal fees, the claim may be considered sufficiently ripe. We reiterate that an "as applied" free speech claim has never been deemed subject to administrative finality doctrine by our court or any other court of appeals, and we do not now so hold. *But cf. Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586 (11th Cir. 1997).

## C.

Even if the administrative finality doctrine is applicable to a post-enforcement First Amendment claim, Peachlum's claim is clearly ripe. York's enforcement proceedings have been spread over a period of approximately ten years and the zoning ordinance has imposed immediate hardship upon her. The interim decision of the zoning authorities has been formalized and its effects felt in a concrete way. Peachlum has had two civil judgments entered against her levying over $1,000 in fines and costs. There is no question that any infringement of her First Amendment speech

rights has already occurred, and that the Federal Court has before it a sufficiently adverse proceeding where factual developments have fully evolved and a decision at this point could provide meaningful assistance to all the parties.

Even if Peachlum were not subject to interim fines and other hardship, this claim would still be ripe because the ZHB appeal fee presents a steep barrier to an administrative appeal. Therefore, although this action comes before us *in res media*, because the City over a considerable period of time has initiated enforcement actions against Peachlum and yet no appeal has been determined, the matter is ripe. Here, Peachlum was unable to pay the substantial appeal fee, and she now faces mounting fines as a result. Her failure to appeal this matter to the ZHB is because of her uncontroverted bleak financial situation. Although we need not decide whether Peachlum's due process was violated by the denial of a fee waiver,[10] the record indicates that Peachlum's default of her right to appeal was entirely innocent. She twice expressed her desire to have the appeal fee waived, and offered to produce supporting financial documentation at the City's request. It never so requested, nor did it apprise her that it considered the burden of proving financial hardship to be on her. We venture no opinion as to whether a willfully defaulted administrative appeal might affect the ripeness of the claim, but Peachlum's default is innocent.

A municipality cannot effectively foreclose the right to

---

10. The general rule appears to be that, in civil cases, denying leave to appeal a lower-level decision *in forma pauperis* "does not [per se] offend the requirements of due process" *Parsell v. United States*, 218 F.2d 232, 235 (5th Cir. 1955). However, where a party "has . . . advanced . . . reason[s] why the denial of a fee waiver inhibits" a constitutional right, the agency appealed to must consider this factor and exercise sound discretion in determining whether to waive the fee. *Ely v. U.S. Postal Service*, 753 F.2d 163, 165 (D.C. Cir. 1985). Thus, to the extent this case involved a constitutional right, that Peachlum articulated to the ZHB, it should have set forth reasons for denying her claim to have the appeal fee waived. Here, despite Peachlum's willingness to present financial information, the ZHB never requested it, or offered any other data specific to Peachlum's claim why she should have been denied *in forma pauperis* status.

appeal while simultaneously asserting that the claim is unripe. *See Lauderbaugh,* 319 F.3d at 575 ("[Defendant] cannot treat its zoning decision as final enough to force a significant hardship upon [plaintiff] by forcing her to pay [penalties] but not final enough to be ripe for adjudication."). For all intents and purposes, because final appeal is now foreclosed, the City "has arrived at a definitive position on the issue that inflicts an actual, concrete injury;" the claim is therefore ripe. *Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 193 (1985).

It is also clear that Peachlum's claim should be deemed ripe based upon the *Abbott Labs.* hardship test. Here, Peachlum's participation in an appeal to the ZHB is conditioned on her tender of the $350 fee, a fee she offered to prove she could not afford. To the extent that Peachlum's appeal has not been waived, the hardship here remains substantial. The City has given no indication that it might be willing to waive the fee.

## D.

Even if there were no fees or other impediments to Peachlum's appeal of this matter, a facial First Amendment challenge may be deemed ripe even during the pendency of an administrative proceeding. Ripeness standards are most relaxed when the First Amendment claim is a facial overbreadth challenge. Facial claims vindicate the rights of many would-be speakers. To allow the vindication of such broad entitlements, we relax our ripeness requirements for such claims. *See Kines v. Day,* 754 F.2d 28, 30-31 (3d Cir. 1985).

In the case of overbreadth challenges, standing arises "not because [the plaintiff's] own rights of free expression are violated, but because of a judicial prediction or assumption that the [challenged statute's] very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick,* 413 U.S. at 612. Therefore, an individual against whom no enforcement action has been taken can still challenge a regulation "because [that regulation] also threatens others

not before the court — those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Waterman v. Farmer*, 183 F.3d 208, 212 (3d Cir. 1999) (*quoting Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503 (1985)).

This concern with the rights of those not before the court holds equal force in both pre-enforcement cases and those in which prosecution is pending. *See Canatella v. State of California*, 304 F.3d 843, 853 (9th Cir. 2002). Although a final administrative decision on Peachlum's claim might definitively resolve its applicability to her sign, the rights of others may go untested. Even if Peachlum's case had been successfully appealed and the ordinance deemed inapplicable to her, one can conceive of manifold other situations where York residents might be unsure of the status of various other forms of signage. Those residents who are more diffident about risking penalties under the ordinance might have their free speech rights vindicated through Peachlum's suit.

The ordinance also appears to be a prior restraint, which further counsels in favor of intervention, even absent final administrative resolution.

> [A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license must contain narrow, objective, and definite standards to guide the licensing authority. The reasoning is simple: If the permit scheme involves appraisal of facts, the exercise of judgment, and the formation of an opinion, by the licensing authority, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great to be permitted.

*Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992) (internal citations and quotations omitted). The City of York contends that Peachlum's ability to put up her sign, notwithstanding the permit provision, demonstrates that there was no prior restraint. However this reasoning is illusory. A failure to enforce the ordinance requirements is not tantamount to permission. The caselaw suggests that the mere existence of such a law raises constitutional

questions. *See Thornhill v. Alabama*, 310 U.S. 88, 97 (1940). The existence of the permit system chills speech, and the failure to enjoin Peachlum physically from maintaining her sign is not dispositive here. The permit procedure in the ordinance enjoins speech, and thus a ripeness holding is appropriate here.

### E.

The District Court relied on *Taylor Investment v. Upper Darby Township*, 983 F.2d 1285, 1291 (3d Cir. 1993), for the proposition that "with respect to zoning disputes, a property owner suffers no mature constitutional injury until the zoning authority defines the application of the zoning ordinance and defines the harm to the owner." The District Court therefore concluded that courts should be exceedingly reluctant to intervene in a zoning dispute before the administrative tribunal has had its final say. *Taylor*, which concerned a zoning dispute over land use, held that administrative finality was required "even where the attack is premised on substantive due process, procedural due process, and equal protection." *Id.* at 1292. This court held that deferral to the administrative tribunal on these constitutional questions served great usefulness in resolving these claims by establishing the zoning board's rationale for its action. Here, though, Peachlum was effectively barred from appealing her claim to the ZHB. Moreover, extending *Taylor* to facial free speech matters is contrary to our precedent, which encourages the prompt constitutional adjudication of laws which may chill the free speech of many persons.

The District Court and the City cited our *Felmeister* opinion for the proposition that in some free speech contexts, final administrative determinations are favored. Notably, in that case the state had "provided an expeditious means of testing the reach of the rule through an advisory opinion process." *Felmeister*, 856 F.2d at 531. The plaintiffs, however, failed to avail themselves of a relatively simple way of determining whether their speech runs afoul of the rule. *Id.* In this case, not only is there no available advisory opinion procedure, but the City has imposed a substantial barrier to Peachlum's invocation of its appeal

mechanism. Moreover, *Felmeister* was a pre-enforcement action in which plaintiffs were not fined or threatened with civil actions as was Peachlum.

## F.

Pursuant to our policy of allowing the District Court to first address the merits of a claim, now that we have decided the claims to be ripe, we decline to pass on the issues concerning whether the ordinance is constitutionally sound. "It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Peachlum correctly notes that there may be some circumstances under which the appellate court may be justified in deciding an issue not passed upon in the District Court. We believe, however, that in this instance it would be appropriate to allow the District Court to analyze the application of the facts pertaining to a complex ordinance and to resolve the remaining substantive issues in the first instance.[11]

## III.

Accordingly, we hold Peachlum's claims are ripe for disposition. The Order of Dismissal will be vacated and the case remanded for further proceedings consistent with this opinion. Given the delays already endured by the parties, it is expected that the District Court will proceed with appropriate dispatch. Costs taxed against the appellees.

---

11. Insofar as Peachlum's free speech, Free Exercise, and Equal Protection claims are all interrelated, the District Court should address all of these outstanding substantive claims together on remand, in the interests of judicial economy. As for her due process claim, a determination that the ordinance was unconstitutionally applied to Peachlum would negate the fines levied against her and would presumably render her due process claim moot. Conversely, an upholding of the ordinance's application would implicitly approve of the City's fine.

18

A True Copy:
Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*